UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CENTRAL DIVISION
CIVIL ACTION NO. 04-40061-NMG

THE UNITED STATES OF AMERICA )
FOR THE USE AND BENEFIT OF )
NEWPORT SAND AND GRAVEL, INC., )
    Plaintiff, )
  )
vs. )
  )
LINCOLN D. REALTY CORPORATION )
AND )
HARLEYSVILLE WORCESTER )
INSURANCE COMPANY, SURETY )
    Defendants )

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

### I. INTRODUCTION

Now comes the Plaintiff, Newport Sand & Gravel, Inc. ("Newport") and opposes Defendants' Motion to Dismiss (the "Motion"). The Defendants assert that Newport's Complaint is time barred under 40 U.S.C. §§270a *et seq.* (the "Miller Act") and therefore fails to state a cause of action upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Newport requests that the Motion be denied.

## II. FACTS

1. Lincoln D. Realty, Inc. ("Lincoln") entered into a contract with the United States Postal Service for the construction of the United States Post Office in Clinton, Massachusetts (the "Project"). Harleysville Worcester Insurance Company, as surety, posted a payment bond for the Project.

2. Lincoln contracted with Aztec Construction Co., Inc. ("Aztec") to provide both labor and materials in Project.

3. Aztec then entered into a contract with Newport to provide a Redi-Rock Retaining and Free Standing Wall System to be used in the Project.

4. Newport supplied Aztec with both the blocks to construct the wall in addition to 5/8ths inch J-bolts used to connect the blocks. Upon demand for payment, Aztec asserted that the Wall System, as designed, was inadequate and required the replacement of the 5/8ths bolts with 3/4 inch bolts.

5. On May 1, 2003, Newport provided Aztec with computer simulated crash testing of its wall, as constructed, which showed that the wall system was adequate. Aztec has failed to pay Newport the contract price of the wall system.

6. On July 14, 2003, Newport provided Lincoln with notice, that it was looking to Lincoln for payment. Lincoln has failed to make payment.

7. The subject Complaint was filed on April 28, 2004.

## III. ARGUMENT

A. Introduction

The Defendants' assert that Newport both failed to provide Lincoln with notice of its claim within the time requirements of the Miller Act and failed to commence suit within one (1) year from the day on which it last performed labor or furnished material to the Project. Such failure, it argues, is fatal to the Plaintiff's claim and therefore the claim is time barred.

Newport disagree's with the Defendants' characterization of the computer simulated crash testing that it performed. The assertion that the testing was "remedial or corrective," (Defendants' Memorandum at p. 4) and does not therefore toll the statute is erroneous.

B. Standard Of Review

In considering whether to dismiss a complaint pursuant to Fed. R. Civ. P. 12(b)(6) "for failure to state a claim upon which relief can be granted" a court must accept all factual allegations in the complaint as true and likewise "all reasonable inferences that might be drawn from them [must be] indulged in favor of the pleader." Gorski v. New Hampshire Dept. of Corr., 290 F.3d 466, 473 (1st Cir. 2002). Only if the plaintiff cannot recover under any "viable theory" is dismissal appropriate. Garita Hotel v. Ponce Federal Bank, 958 F.2d 15, 17 (1st Cir. 1992).

C. The Act's Purpose

The Miller Act allows first and second-tier subcontractors to sue in federal court for the fair value of work performed pursuant to a government project. To protect their interests prime contractors are required to post bond covering the cost of the government contract. However, in

an effort to provide a timely resolution to outstanding claims and to protect prime contractors from late arising claims, Section 270b(a) of Miller Act requires subcontractors to notify prime contractors within 90 days of providing work or supplies of the amount claimed. Section 270b(b) further requires subcontractors to file suit within one year of providing such work or supplies.

In light of Congress's desire to protect prime contractors by allowing them to pay first-tier subcontractors after an ascertainable date without risk of subsequent claims under the Miller Act by second-tier contractors, courts have been unwilling to toll the notice and filing requirements of the Miller Act or to liberally construe the meaning of "labor" for equitable purposes. A "punch list" not required for the operations specified in the contract, completed two and a half years after the main contract work, did not count as "labor" under the Miller Act and therefore did not reset the clock for notice purposes. U.S. for the Use and Benefit of T.L. Wallace Const., Inc. v. Fireman's Fund Ins. Co., 790 F.Supp 680 (S.D. Miss 1992). Similarly, "labor" has not been broadly construed to include remedial work of a warranty nature or the testing of replacement components. U.S. for the Use and Benefit of Interstate Mechanical Contractors, Inc. v. International Fidelity Insurance Co., 200 F.3d 456 (6th Cir. 2000). Indeed, every circuit that has considered the issue has not construed "labor" to include such work.

D. <u>Newport's Inspection Completed in the Course of Executing its Contract and at the Request of Aztec is Labor for Purposes of the Miller Act.</u>

The First Circuit has not has not had the opportunity to consider the meaning of "labor" as it relates to work of a remedial or warranty nature. Assuming that the First Circuit will follow its

4

sister courts when confronted with that particular issue, it is nonetheless an open question in the instant matter as to whether the work done by Newport in performing an inspection --at the request of the subcontractor-- of its own work prior to the acceptance and completion of the contract should be classified as remedial warranty work or is more properly considered the final act in carrying out its contractual obligations.

Without diminishing the import of established case law, it goes without saying that a contractor must have the right to inspect his work on an on-going basis and also as a contract comes to completion in order to ensure compliance with applicable contract specifications, building codes, etc. As such inspections and any consequential repairs or adjustments are inevitably incidental to all contract work, neither being remedial or warranty-related in nature, and engaged in for the purpose of performing contract services, they should be considered "labor" for purposes of the Miller Act.

Consistent with this view, the Eight Circuit has held that the 90-day notice requirement does not begin until delivery is made in usable condition. In <u>U.S. for the use of General Electric Co., v. Gunnar I. Johnson & Son, Inc.</u>, 310 F.2d 899 (8th Cir. 1962), the Court held that a contract for a delivery of a electrical distribution system was not complete upon the initial delivery of the distribution system but only when the distribution system had been delivered as a usable product. Therefore, the replacement of components shipped and installed which were not to specification was held to be labor for purposes of the Miller Act. <u>Id</u>. The fact that the distribution system had been wholly delivered prior to the discovery of the non-conforming parts did not prevent the subsequent replacement from being considered labor and not work of a remedial nature. While <u>ex rel General Electric</u> did not concern itself with the nature of inspections it is axiomatic that the

inspection for compliance which revealed the underlying flaw in the distribution system, had it been performed by the supplier, would have also been considered labor. Such initial inspections, prior to delivery and acceptance of a completed product or service, are simply part of the greater effort to deliver a conforming product or service.

Just as the repair or replacement of non-conforming parts is not per se remedial, neither is the completion of a punch list per se remedial. (See, e.g., U.S. for the Use and Benefit of Austin, et al. v. Western Electric, et al., 337 F.2d 568 (9th Cir. 1964), allowing that a punch list may be necessary for completion of original contract and therefore not remedial). As punch lists are not per se remedial, neither should the inspection creating such a list be considered per se remedial. Rather the inquiry should be the same for the inspection as for the punch list. The court must consider the nature of the inspection. If the inspection was reasonably necessary for meeting the requirements of the original contract then such an inspection should be considered labor. Id. at 575.

Even when the courts have held that inspections did not qualify as labor for purposes of the Miller Act, they have been careful to limit their holdings to situations where the inspections were of a remedial or warranty nature. When the Sixth Circuit held that testing of installed heaters was remedial in nature and did not fall under the Miller Act's definition of labor, the Court was careful to expressly note that its ruling did not stand for the proposition that such testing was per se remedial and outside the bounds of the Miller Act. Interstate Mechanical Contractors, Inc., 200 F.3d at 461. Rather, the most pertinent facts were that original contract called for one inspection which had been previously completed and the contract had been represented as completed, with the government taking beneficial occupancy. Additionally, the

inspection at issue was the third such test. For these reasons --not because inspections are generally per se remedial-- the Court declined to construe the Miller Act to include the third and final inspection as labor. Id.

Thus courts consistently take pains to exclude only those inspections, replacements, and punch lists which are of a warranty nature from the Miller Act's definition of labor. Neither inspections, replacements, or punch lists have been held to be per se remedial. Therefore, Defendants' statement in their supporting memorandum that "remedial or corrective work...does not fall within the meaning of 'labor', while true, is not helpful in answering the question of whether Newport's inspection is of such a nature. Indeed, Defendants' entire memorandum assumes that Newport's inspection is remedial in nature while not offering a single argument in support of that assumption.

### E. Defendant's Motion to Dismiss is Inappropriate

Considering the adequacy of Newport's complaint, it is apparent that Newport can prove a set of facts that would show that the Newport's inspection not remedial in nature but was carried out as part of its contractual obligations. Newport plead that it provided labor in the form of an inspection of its own Wall System. The inspection occurred prior to Aztec's acceptance of Newport's work as conforming to the contract requirements. The inspection occurred at the request of Aztec. Finally, the inspection was the first (and only) such inspection. These bare facts hardly mandate the conclusion that Newport's inspection was remedial in nature and therefore not labor for the purposes of the Miller Act. Indeed, given the sequence of events, the only reasonable conclusion at this early stage is that Newport likely will prove a set of facts that

7

could form the basis for a favorable decision. This being the case, dismissal is inappropriate.

### F. Allowing the Motion Would Have Adverse Practical Effects

Finally, as a practical matter, a holding in Defendant's favor, which is not mandated by established case law, would have the practical effect of curtailing the ability of second-tier subcontractors to provide satisfactory oversight of their own work. It would empower first-tier subcontractors to make spurious demands for inspection to "ensure compliance," knowing of the 90-day notice requirement. When such inspections take longer than 90-days, as they frequently will in even modestly complicated matters, the second-tier subcontractor will be foreclosed from seeking relief under the Miller Act. Ironically, because an inspection and immediate repair prior to contract completion and acceptance is "labor", only those second-tier contractors that delivered non-compliant work product would be protected under the Miller Act when the inspection or testing exceeded 90 days. Those, such as Newport, delivering satisfactory products, the inspections revealing no error, would be precluded from relief. Such a result is inconsistent with the overall goal of the Miller Act and unnecessary under established case law.

### G. Conclusion

The Defendants' characterization of the computer simulated crash testing that Newport performed as "remedial or corrective," is inaccurate. The Plaintiff's Complaint has stated a cause of action upon which relief may be granted. Therefore the Defendants' Motion to Dismiss ought to be denied.

8

## IV. REQUEST FOR ORAL ARGUMENT

Pursuant to Rule 7.1(d), Plaintiff believes that oral argument may assist the Court and wishes to be heard, and therefore requests oral argument.

Dated: July 13, 2004

Respectfully submitted,
Plaintiff,
By its Attorney,

_____
Carl F. Schmitt, Esq. (BBO# 564988)
Schmitt Dillon & Smillie
5 Mount Royal Avenue
Marlborough, MA 01752
508-281-5766

### Certificate of Service

I, Carl F. Schmitt, hereby certify that on July 13, 2004 I served the foregoing document upon the Defendant, by delivery in hand to their attorney, Robert B. Gibbons, Esq. Mirick, O'Connell, DeMallie & Lougee, LLP, 100 Front St., Worcester, MA 01608.

_____
Carl F. Schmitt, Esq.